MATILDA POLONY, ADMINISTRATRIX AD PROSEQUENDUM
OF RUDOLPH POLONY, DECEASED, PLAINTIFF, v.
JAMES BRADY'S SONS' COMPANY, DEFENDANT.

Decided October 9, 1924.

**Negligence—Death Act—Death of Employe of a Carpenter
While at Work for Defendant—Defendant's Contention That
Verdict was Contrary to Law—Employe was Lawfully En-
gaged—Rule Discharged.**

On defendant's rule to show cause.

Before Justices KALISCH, BLACK and CAMPBELL.

For the rule, *Treacy & Milton.*

*Contra, Perkins & Drewen.*

PER CURIAM.

There was a verdict at the Hudson Circuit in favor of the
plaintiff against the defendant for $15,000, in an action
brought in this court by the plaintiff under the Death act, to
recover the pecuniary loss sustained by her, the widow of
the decedent, and the next of kin, consisting of two minor
children, a boy of eight and a girl of nine years, for the death
of the decedent, alleged to have been caused through the
negligence of the defendant's servants.

Of the numerous reasons presented for a new trial in the
printed case, the only one relied on and argued in the defend-
ant's brief is, that the verdict was contrary to law. Under
this head it is argued that there was no competent proof of
the negligence alleged in the plaintiff's complaint and upon
which the verdict was based.

The plaintiff's decedent, thirty-one years of age, was in the
employ of one Fitzpatrick as a carpenter, at the time he met
with his death. On the morning of the accident the dece-

dent was sent by his employer to do some carpenter work on defendant's premises. At the time the defendant's servants were engaged in unloading sand from a scow by means of a bucket attached to a boom operated by steam. The servant who operated the bucket was a stationary engineer. The boom was held in position by a dog as it carried the bucket from the scow to the hopper. The bucket weighed between two thousand five hundred and three thousand pounds. The scow from which the sand was taken was about fifty feet away from the hopper in which the sand was dumped. The dog which holds the boom in position is an iron bent, which falls into notches cut in the end of the drum and stops the turning of the drum and holds the boom in position. The drum is the cylinder around which the cable is wound. While the plaintiff's decedent was erecting housing around some of defendant's machinery and was kneeling on a platform, which was nine feet in the rear of the hopper and two feet from the ground, sawing a piece of timber, the boom carrying the bucket suddenly dropped from its upward angle, which in its turn caused the bucket to be swung outward in the direction where plaintiff's decedent was at work, striking him and inflicting fatal injuries.

There was proof which warranted the jury in finding that the falling of the boom was the result of negligence on the part of the defendant.

Costello, the expert, testified that a bent shaft, light friction blocks or a weak spring would cause the boom to fall; that these conditions would be apparent upon inspection. There was some testimony which tended to show that the apparatus, at least some of it, had been in the use of the defendant about thirteen years. From the testimony the jury was also warranted in finding that no inspection was made of the operating machinery to ascertain its condition for use. The defendant offered no defense.

It seems to us that the plaintiff assumed an unnecessary burden.

The undisputed facts are that the plaintiff's decedent was in the employ of Fitzpatrick, the latter having a contract

with the defendant company to do certain carpenter work on its premises. The plaintiff's decedent was one of Fitzpatrick's employes sent by him to take part in the work to be performed there, and, while engaged in doing the work, he was struck by the heavy bucket, controlled and operated by the servants of the defendant, resulting in his injury and death as above detailed.

We have, under the situation as presented by the evidence, the plaintiff's decedent being in a safe place for the performance of the work to be done on the defendant's premises, and where he had a lawful right to be, and, therefore, it became a duty incumbent upon the defendant to exercise reasonable care to keep and maintain the place safe, and to use reasonable care to protect the plaintiff's decedent against injury to life or limb from the use of defective machinery by it in doing its own work or through the negligence of its servants, or from an unsafe condition of the premises unknown to the plaintiff's decedent, and which could not be ascertained by him in the exercise of reasonable care on his part.

The other essential, undisputed fact, established by the evidence, was that in the operation of the boom which carried the heavy bucket, in its ordinary and normal route, to a hopper nine feet away from the place where the plaintiff's decedent was at work, the boom dropped from its upward angle, causing the bucket to swing away from its ordinary and normal route and to take an outward course in the direction of the place where the decedent was at work. The falling of the boom, the abnormal course that the bucket took, in the light of the evidence, were, presumptively, due to either one of two causes, namely, negligence of the servants who operated the boom which directed the course of the bucket, or to some defect in the machinery in use.

In the absence of explanatory circumstances, the related facts raised a presumption of negligence on part of the defendant, upon whom rested the burden to meet and overcome this presumption by proof of the exercise of reasonable care on its part. Moreover, there was testimony on behalf of the plaintiff a bent shaft, light friction blocks or a weak

spring would cause a boom to drop. The defendant offered no proof.

We cannot, therefore, say with propriety, that the verdict was contrary to law and against the weight of the evidence.

Entertaining the views, as above expressed, we find it to be unnecessary for us to decide the question argued in the defendant's brief, whether or not the trial judge erred in refusing to strike out, on motion of defendant's counsel, a statement made by the vice president of the defendant company, who was examined as a witness before trial on behalf of the plaintiff, and who, in the course of giving testimony, without any objection coming from defendant's counsel, testified that the defendant company's engineer, in speaking of the cause of the accident, had said that he figured the dog must have let go.

There was ample competent testimony to warrant a jury to reach the result that the death of the plaintiff's decedent was due to negligence on part of the defendant company.

The rule to show cause is discharged, with costs.